IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOSEPH C. HORN,
    Plaintiff,

vs.                              Case No.: 3:06cv108/LAC/EMT

OFFICER WALLACE, et al.,
    Defendants.
_____/

## **ORDER**

        This cause is before the court on Plaintiff's civil rights complaint filed pursuant to 42 U.S.C. §1983 (Doc. 1).  The filing fee has been paid (Doc. 16).  From a review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to the named Defendants.  The court will therefore allow Plaintiff an opportunity to correct the deficiency in an amended complaint.

        Plaintiff was an inmate of the Okaloosa County Jail (OCJ) during the time frame relevant to his complaint and has since been transferred to a Florida Department of Corrections facility (*see* Docs. 1, 20).  Named as Defendants are Officer Wallace, Officer Allen, and Sergeant Tobin, correctional officers at OCJ.  Plaintiff states that on the night of June 28, 2005, he and five other inmates were released from their cells to take a shower and use the telephone (Doc. 1 at 7 and attached pages). Correctional officers gave the six inmates fifteen minutes to use the telephone and shower, but the inmates were required to shower one at a time (*id.*).  Plaintiff alleges that he was the last to shower and had just put soap on his head and body when the officer in the control tower signaled that it was time for all the inmates to return to their cells (*id.*).  Correctional Officer Johnson told Plaintiff to leave the shower and Plaintiff asked for time to wash the soap out of his eyes (*id.*). Plaintiff states that he heard the dormitory door open, and when he had turned around, several correctional officers were standing just outside the shower (*id.*).  One of them, Defendant Wallace,

asked Defendant Tobin (the officer in charge), "What do you want to do with (him)?" (*id.*). Defendant Tobin replied, "put (him) in his cell" (*id.*). Plaintiff alleges that he was "immediately grabbed from behind by Wallace in a two-hand strangle hold around the neck" (*id.*). Next, Plaintiff states that Defendant Allen placed him in a "hammer lock," pulling Plaintiff's arm behind his back and lifting Plaintiff completely off of the floor (*id.*). Plaintiff was carried (by both Wallace and Allen) approximately "eighty feet across the cell block floor, up the stairs to the second tier and summarily thrown into (his) cell where plaintiff landed on top of another inmate" (*id.*). While Defendants Wallace and Allen lifted Plaintiff, Plaintiff states that the other correctional officers laughed (*id.*).

Plaintiff notes that on September 11, 2004, he suffered serious injury in a car accident, including shattering his left arm (*id.*). According to Plaintiff's allegations, this previous injury was apparent by the "disfigurment [sic] and extensive scar tissue present" (*id.*). Plaintiff states that Defendant Allen applied the hammer lock to Plaintiff's injured left arm (*id.*). After Defendants Wallace and Allen returned Plaintiff to his cell, Plaintiff "declared a medical emergency" to Correctional Officer Johnson, who refused the Plaintiff's request (*id.*). Two hours after requesting medical treatment, Plaintiff was "finally" taken to the medical department (*id.*). Plaintiff complained of "extreme difficulty breathing and swallowing," "discoloration and bruising," and "excruciating pain in (his) left shoulder and elbow, along with significant swelling in regards to the latter" (*id.*). While Plaintiff discussed his injuries with the nurse, Plaintiff states that the two correctional officers who escorted him to the medical department "were making jokes and laughing about the plaintiff" (*id.*). Correctional officers wrote Plaintiff a disciplinary report regarding this incident, but Plaintiff was never brought to a hearing (*id.*). Plaintiff states that he was written several more disciplinary reports following the incident by correctional officers present when Plaintiff was allegedly assaulted (*id.*). Plaintiff implies that the correctional officers wrote the disciplinary reports to punish Plaintiff for using the grievance procedure at the jail to report his assault (*see id.*).

Plaintiff claims that he suffered a violation of his Eighth Amendment rights for the "unprovoked, unlawful use of force where two correctional officers acted in their official capacity but outside the color of law by choking and arm barring a passive, unresisting inmate" (Doc. 1 at 8). Plaintiff seeks $250,000 in punitive damages, appointment of counsel, and injunctive relief from reprisal from jail staff (*id.*).

The Eighth Amendment requires that, at the minimum, all claims challenging conditions of confinement must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981); *see also* Hamm v. DeKalb County, 774 F.2d 1567, 1571-72 (11th Cir. 1985). Furthermore, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

The Supreme Court has developed a two-part analysis governing Eighth Amendment challenges to prison conditions. Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

> First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). The challenged condition must be "extreme." *Id.* at 9, 112 S.Ct. at 1000. While an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.* at 35, 113 S. Ct. at 2481. Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.* at 36, 113 S. Ct. at 2482. The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347, 101 S. Ct. at 2399.

Chandler, 379 F.3d at 1289-90.

The second part of the two-part analysis is the "subjective component:"

> [T]he prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. Hudson, 503 U.S. at 8, 112 S. Ct. at 999 (marks and citation omitted). The proper standard is that of deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991). Negligence does not suffice to satisfy this standard, *id.* at 305, 111 S. Ct. at 2328, but a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result," Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128

>L. Ed. 2d 811 (1994).  In defining the deliberate indifference standard, the Farmer Court stated:  [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Id.* at 837, 114 S. Ct. at 1979.  Furthermore, the official may escape liability for known risks "if [he] responded reasonably to the risk, even if the harm ultimately was not averted."  *Id.* at 844, 114 S. Ct. at 1982-83.

Chandler, 379 F.3d at 1289-90.

In the instant case, Plaintiff's factual allegations fail to state a constitutional claim against Defendant Tobin.  Plaintiff states only that Defendant Tobin directed other officers to put Plaintiff in his cell.  Plaintiff has not alleged that the officers were directed to harm Plaintiff in any way or that Defendant Tobin was aware of any risk to Plaintiff's health or safety by virtue of directing other officers to put Plaintiff in his cell.  Unless sufficient facts exist to state a claim against Defendant Tobin, Plaintiff should delete him as a Defendant in his amended complaint.

As to Defendants Wallace and Allen, it appears that Plaintiff has also failed to state a constitutional claim.  Regarding the objective component of the Eighth Amendment inquiry, Plaintiff does not allege that the incident posed an "unreasonable risk to his future health" or that it was completely lacking in penological purpose.  Plaintiff admits that, prior to the incident, he could not see flashing lights "signaling all inmates to return to their cells" because he had soap suds covering his face, and he could not hear the "command to exit the shower" (*see* Doc. 1 at 7 and attached pages).  Thus, by the time the officers removed Plaintiff from the shower, he had been signaled and commanded to exit the shower, but he still remained in the shower.  It was at that point that he was ordered to be removed from the shower.  Regarding the subjective component, Plaintiff does not allege that Defendants acted with a "sufficiently culpable state of mind," or that any of the Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety."  Although Plaintiff alleges his left arm was disfigured and had scar tissue present, he has not alleged that Wallace or Allen knew of his injury, noticed his disfigurement, or that their manner of removing Plaintiff from the shower presented an excessive risk to Plaintiff's safety.  Unless additional facts exist, Plaintiff should drop Defendants Wallace and Allen as Defendants.

Additionally, Plaintiff is not entitled to all of the relief he seeks.  His claim for injunctive relief appears to be moot as he is no longer incarcerated at the Jail.  *See* Spears v. Thigpen, 846 F.2d

1327, 1328 (11th Cir. 1988), *cert. denied*, 488 U.S. 1046, 109 S. Ct. 876, 102 L. Ed. 2d 999 (1989); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985). The court notes that Plaintiff filed a notice with the court indicating he has been transferred from OCJ to the Reception and Medical Center (*see* Doc. 20).

Finally, Plaintiff is not entitled to appointment of counsel in this case. The appointment of counsel in civil cases is not a constitutional right; rather it is "a privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987). As the court at this time does not view the case as exceptionally complex, the court will not appoint counsel to Plaintiff at this time.

Plaintiff should carefully review the foregoing to determine whether he desires to proceed with this action. If Plaintiff determines that he does not, he should file with the court a notice of voluntary dismissal. If Plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Amended Complaint**." Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form and include their addresses and employment positions in the "Defendants" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant was involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint. Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded. Local Rule 15.1, Northern District of Florida.

Accordingly, it is **ORDERED**:

1. The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. §1983. This case number should be written on the form.

2. Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the

court form, and marked "**Amended Complaint**."  In the alternative, Plaintiff shall file a notice of voluntary dismissal within the same time period.

      3.      Failure to comply with this order may result in dismissal of this action.

**DONE AND ORDERED** this 12th day of September 2006.

                          /s/ *Elizabeth M. Timothy*
                          **ELIZABETH M. TIMOTHY**
                          **UNITED STATES MAGISTRATE JUDGE**