IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOSEPH CHARLES HORN,
      Plaintiff,

vs.                            Case No. 3:06cv108/LAC/EMT

OFFICER WALLACE, et al.,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

      This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon referral from the clerk.  On January 16, 2007, the pro se Plaintiff, who is proceeding in forma pauperis in this action, filed a Third Amended Complaint (Doc. 37).  Plaintiff alleges that the Defendants, Officers Wallace, Allen and Tobin, violated his constitutional rights by the use of excessive force.  The court directed service of the complaint on Defendants.

      On April 23, 2007, Officer Tobin filed a special report and supporting documents (Doc. 46), and on July 31, 2007, Officers Wallace and Allen filed a special report and supporting documents (Doc. 63).  Plaintiff filed a response to the special reports and supporting documents on April 14, 2008 (Doc. 88).  On April 21, 2008, the court entered an order advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, informing the parties of the requirements of materials that may be considered on summary judgment, and informing the parties that the special reports would be construed as motions for summary judgment as of April 21, 2008, and taken under advisement on or after May 21, 2008 (Doc. 91; *see also* Doc. 64).  None of the parties filed additional argument or Rule 56 materials.

      Upon review of the summary judgment record, it is the opinion of the undersigned that Defendants' motions for summary judgment should be granted.

I.      BACKGROUND

Plaintiff was an inmate of the Okaloosa Correctional Institution (Jail) during the time frame relevant to his complaint (he has since been released) (*see* Docs. 37, 70).  Named as Defendants are Officers Wallace, Allen and Tobin, correctional officers at the Jail (Doc. 37 at 1, 2).  Plaintiff sues Defendants in their individual capacities and claims that Defendants used excessive force in violation of the Fifth and Fourteenth Amendments (Doc. 37 at 1, 8).  As relief, Plaintiff seeks $100,000.00 in compensatory damages against each Defendant, $300,000.00 in punitive damages against each Defendant, nominal damages of $1.00 against each Defendant, and all litigation costs associated with this case (*id.* at 8).

Plaintiff alleges the following facts in his verified Third Amended Complaint.  Prior to his incarceration, Plaintiff was in a car accident and sustained severe injuries (*id.* at 7-A).  He has a titanium rod in his left arm from his wrist to his elbow, his right arm has permanent nerve and tendon damage, his left leg has torn tendons and limited use, he has permanent staples in the heel of his right foot, his right toe is permanently deformed, he has seven to eight damaged vertebrates in his back, and he has two ribs that were broken and have never healed correctly (*id.* at 7–7-A).  Because of these injuries, Plaintiff has limited mobility and is in constant pain (*id.* at 7-A).  Plaintiff alleges that Defendants were aware of his medical problems (*id.* at 7).  For example, Plaintiff states that Officers Allen and Tobin spoke to Officer Wallace numerous times about Plaintiff's mobility and medical conditions, and each Defendant spoke to medical staff regarding Plaintiff's medical conditions (*id.* at 7-A).  Moreover, Plaintiff alleges that he explained his injuries in detail to Officer Wallace, and he, as well as the other Defendants, teased him and threatened him with bodily harm because of his disabilities (*id.* at 7-A, 7-B).  He further alleges that Defendants told him that "[t]hey whip young, old, disabled, and anyone who pisses them off" (*id.*).  Additionally, Plaintiff alleges that Officers Wallace and Allen do not like him because they believe his medical conditions are "all in [his] head" (*id.* at 7-B).

On June 28, 2005, several inmates were to take showers, and Defendants told Plaintiff to shower last due to his medical problems (*id.*).  Plaintiff, "the last man to shower," entered the shower and began washing himself (*id.*).  Plaintiff states that he did not see the "alleged lights flash," which indicate that prisoners must return to their cells, because he was washing the soap out of his hair

(*id.*).  Plaintiff was then given a verbal order to exit the shower as he was trying to rinse out the soap, but "within seconds" of that order, Defendants surrounded him (*id.*).  Plaintiff states that he was attempting to comply with the verbal order, but Defendants did not allow him to comply, and the next thing Plaintiff heard was Officer Wallace asking, "what do you want to do with him?" (*id.*).  In response, Officer Tobin told Wallace to "deal with him how you know best" (*id.* at 7-C).[1]  Officer Wallace then "grabbed the Plaintiff from behind . . .  and placed Plaintiff in a choke hold with both hands and lifted Plaintiff off the ground which cut off Plaintiff's air supply" (*id.*).  Plaintiff alleges he was choked by Officer Wallace until he turned "red and blue" and began to lose consciousness (*id.*).  Plaintiff's eyes hurt and felt "as if they were going to pop out of his head" (*id.*).  Plaintiff's head also hurt due to a lack of air, and his back hurt due to his spinal injuries (*id.*).  Plaintiff alleges that although he did not resist or fight back, Officers Allen and Tobin "watched and urged on Officer Wallace saying kill that shit head" (*id.*).  Moreover, Officers Allen and Tobin told Wallace to "choke his ass good," and although Officer Tobin was the officer in charge, he refused to stop Wallace and told Allen to "get him some" (*id.* at 7-C, 7-D).[2]  Plaintiff further alleges that Officer Allen placed him in a "hammer lock which is a dangerous arm lock wherein the victums [sic] arm is wrenched up behind his back," and although Defendants knew that Plaintiff's arm had a steel rod in it, Officer Allen tried to break Plaintiff's arm with a hammer lock, and Officer Tobin laughed and told Allen to break Plaintiff's arm (*id.*).  Furthermore, after Officer Tobin's comment, Allen applied even more force in an attempt to break Plaintiff's arm (*id.*).  Officers Allen and Wallace then dragged Plaintiff up the stairs while holding him in a hammer lock and choking him (*id.*).  While going up the stairs, Plaintiff's right heel caught on the bottom step, and Plaintiff screamed, but Allen continued to drag Plaintiff (*id.*).  Defendants Allen and Wallace laughed and told Plaintiff that "they will get [him] later" (*id.* at 7-D).  Plaintiff was thrown into his cell, naked, on top of another inmate, and once in his cell Plaintiff "declare[d] a medical emergency" (*id.* at 7-D).  Officer Allen told Plaintiff that he was not going to medical, and Officer Wallace stated, "we can put you perminetly [sic] in medical

---

[1]Plaintiff also alleges Officer Tobin knew that Officers Wallace and Allen used excessive force to hurt, frighten, and intimidate inmates (Doc. 37 at 7-C).

[2]Plaintiff did not number the two (2) supplemental pages after page 7-C; therefore, for ease of reference, the court will refer to those pages as 7-D and 7-E, respectively.

after we beat your ass in good shape shithead" (*id.* at 7-D–7-E).  Plaintiff states that since this incident, his arm has remained swollen, and he is in constant pain (*id.* at 7-D).

In conclusion, Plaintiff states that he followed Defendants' orders and did nothing to warrant their use of excessive force, and further, that Defendants' actions "served no penologicall [sic] interest but was a malicious wanting attack for no reason but defendants [sic] enjoyment" (*id.* at 7-E).  Plaintiff also states that another staff member took Plaintiff to the medical department and his injuries and bruises were noted in his medical file (*id.*).  Plaintiff states that he submitted a grievance, as instructed by Lt. McDoogle, regarding Defendants' mistreatment and use of excessive force, but no one responded to the grievance (*id.*).  Plaintiff also claims that a disciplinary report (DR) was filed and dropped, and Officer Tobin told Plaintiff to "leave the matter alone or it would not be good for plaintiff's health and plaintiff would get a good ass beating" (*id.*).  Plaintiff states that he attached a copy of the excessive force grievance to the "first and second complaint form," and therefore, he apparently found it unnecessary to resubmit the grievance with any later pleadings (*id.*).

The court notes, however, that <u>three</u> grievances were attached to Plaintiff's original complaint (Doc. 1, Ex. A), but they were not attached to the second and third amended complaints or submitted with Plaintiff's response to the summary judgment motions (*see* Docs. 24, 37, 88).  Although Plaintiff was previously advised that once an amended complaint is filed, all earlier complaints and filings are disregarded (*see* Docs. 22, 25, 33), the court will nevertheless consider the grievances in light of Plaintiff's pro se status.  The first grievance attached to the original complaint, dated July 29, 2005, is directed to Officer F. Zullo and states:

> On Officer Zullo for harassing me over an incident when I was dragged out of the shower weeks before naked an[d] choked [] excessive force was grieve [sic].  I feel my time here he has a personal vendet[t]a to[wa]rd me an[d] I wish Officer Zullo would be attended to profes[s]ional an[d] proper [sic] by Florida Stand[a]rd Rules on harassing me all the time an[d] making up his problems to be mine an[d] being harrass[ed].  Thank you.

(Doc. 1, Ex. A).

The second and third grievances, dated February 23, 2006 and March 8, 2006, respectively, and directed to Captain Carla Morasch and state:

> I need the final disposition on an incident from 6-28-05 in which I received a DR Report #050668 from Mr. Johnson.  After filing the grievance I never got any response.  Please send me the final status of this grievance (the grievance was written for excessive force) against the D.R. [Second Grievance, dated February, 23, 2006]
>
> I am being denied an answer to my grievance.  You allow for 5 working days.  It[']s been over.  Please rectify this constitutional breach of my civil rights.  Thank you. [Third Grievance, dated March 8, 2006]

(*id.*).

Officer Tobin, in his motion for summary judgment, contends that dismissal of Plaintiff's claims against him is warranted because Plaintiff failed to properly exhaust his administrative remedies (Doc. 46 at 4–11).  In support of this contention, Officer Tobin submitted a copy of the written policy of the Jail concerning the inmate grievance procedure (Jail policy), as well as a copy of an affidavit of P. Lawson, Deputy Director of the Jail (*id.*, Exs. A, B).  The Jail policy states that its effective date is August 24, 2006, and it rescinds the policy implemented on October 1, 2005[3] (Doc. 46, Ex. A at 1).  The Jail policy provides, in pertinent part, the following:

Time guidelines:

1.    The inmate must file the complaint (grievance) within seven days of the alleged incident.  Request forms should be made available to the inmates within the housing areas.

2.    The Grievance Officer shall have seven (7) days in which to answer the inmate's complaint.  The inmate may appeal the Grievance Officer's decision for cause within seven (7) days of receiving a response.

3.    The Deputy Director has seven (7) days to answer an appeal.

4.    The Director has fifteen (15) days in which to answer a formal grievance.

5.    If the subject matter of the complaint (grievance) is such that compliance with the regular time guidelines would subject the inmate to risk of personal injury, the inmate may detail the basis for immediate response and ask that the grievance be considered an emergency grievance.  Action shall be taken to resolve emergency grievances within twenty-four hours of receiving the grievance.

---

[3]Deputy Director Lawson's affidavit states that although the Jail policy submitted by Officer Tobin indicates that the policy is effective after October 1, 2005, the same policy was in effect on June 28, 2005, the date of the alleged incident (*see* Doc. 46, Ex. B at 2).

6.      The inmate may grieve only one issue at a time.  Multiple complaints must be addressed individually to ensure quality control of the process.

(*id.*, Ex. A at 1–2).

In Deputy Director Lawson's affidavit, he states that he was the Deputy Director of the Jail during the time of the alleged incident (*id.*, Ex. B).  He also states that he was not directly involved in the incidents alleged in Plaintiff's complaint, but he is familiar with the manner in which inmate grievance policies and procedures are administered and maintained, as well as the manner in which records of inmate grievances and requests are kept (*id.*, Ex. B at 2).  Furthermore, Deputy Director Lawson states that, "[a]lthough not directly stated in the Inmate Grievance Procedure Policy, inmates are told they may appeal to the next higher level of administrative review if they fail to receive a response to a grievance when they believe a response is warranted" (*id.*, Ex. B at 3).

Officer Tobin also submitted a copy of a grievance submitted to "Mr. Lawson" on June 29, 2005, regarding the alleged use of excessive force by Defendants Wallace and Allen on the previous day (*id.*, Ex. F).[4]  This grievance states:

On all parties involved Florida Model Jail Standards. Us[]ing excessive force remove[d] me from the shower naked by the thro[a]t grabbed from behind by Wallace and dragged backwards up stairs an[d] Of[ficer] Allen grabbe[d] my left arm with a [] Titanium Rod an[d] twisted my arm while being choked up the stairs.  Look at medical reports.

(Doc. 46, Ex. F).

In support of his motion for summary judgment, Officer Tobin first states that none of the three grievances filed by Plaintiff (i.e., those attached by Plaintiff to the original complaint) were timely submitted, noting that they were submitted on July 29, 2005, February 23, 2006, and March 8, 2006, and the Jail policy requires that they be submitted within seven days of the alleged incident, or in this case, within seven days of June 28, 2005 (*id.* at 6–7).  Moreover, Officer Tobin contends that none of those grievances were appealed to the next higher level of administrative review, as provided by the Jail policy (that is, an appeal of the Grievance Officer's decision to the Deputy Director within seven (7) days of receiving a response, or alternatively, an appeal to the next higher level of administrative review if Plaintiff received no response to a grievance when he believed a

---

[4]This grievance was <u>not</u> submitted by Plaintiff with any of the pleadings he filed in this case.

response was warranted) (*id.* at 7–10).  Thus, Officer Tobin argues, those grievances do not establish that Plaintiff properly exhausted his available administrative remedies (*id.*).

Moreover, with regard to the grievance submitted by Plaintiff on June 29, 2005, which has been supplied by Officer Tobin and attached to his motion for summary judgment (*id.* at 10–11 & Ex. F), Officer Tobin concedes that the grievance was timely submitted.  However, Officer Tobin asserts that Plaintiff failed to properly comply with grievance procedures and, therefore, failed to properly exhaust his administrative remedies.  Initially, Officer Tobin states that the grievance is directed to "Mr. Lawson," the Jail's Deputy Director — to whom <u>appeals</u> are to be addressed — instead of being directed to a grievance officer as required, and noting that the grievance is not labeled as an "emergency" and does not indicate in any way that it was filed as an "emergency" (*see id.*).  Next, Officer Tobin asserts that even if this grievance was properly submitted, despite being addressed to "Mr. Lawson," Plaintiff failed to appeal to the next higher level of administrative review when he failed to receive a response to the grievance (Doc. 46 at 10).

Defendants Wallace and Allen, in their motion for summary judgment, contend that dismissal of Plaintiff's claims against them is warranted because Plaintiff failed to properly exhaust his administrative remedies (Doc. 63 at 2).  In support of this contention, Defendants Wallace and Allen rely upon the same legal arguments and exhibits submitted by Officer Tobin, and they adopt and restate Defendant Tobin's argument regarding Plaintiff's failure to exhaust his administrative remedies (*id.*).

In response to the motions for summary judgment, Plaintiff submitted a "summary on special report," essentially re-stating that he was harrassed due to his disabilities and alleging that he was denied medical passes and not housed on the "bottom floor bottom bunk," where he should have been housed due to his injuries (Doc. 88 at 1).  Plaintiff further contends that "they . . . made threats and set [him] up" (*id.*).  Additionally, Plaintiff states, "[A]nything [I] wrote up or tried to file & gr[i]evance forms the jail made it disap[p]ear along with wit[]ness statements" (*id.* at 2).  Plaintiff also attached the following exhibits: (1) three special needs communication forms from Jail "medical" to Jail "security" recommending bottom floor, bottom bunk, rehousing, and daily shower passes for Plaintiff (*id.*, Exs. A-1–A-3); (2) a DR written by Officer L. Jordan for an incident that occurred on June 27, 2005, along with a supervisor's comments and recommendations that Plaintiff

be "rehoused due to his behavior," as well as the disciplinary hearing report indicating that the action was dismissed for failure to follow due process and a related DR investigation report (*id.*, Exs. B-1–B-4); (3) DRs written by Officers F. Allen, Bryan Graham, S. Wallace, J. Larry, and C. Johnson, Sr. regarding the alleged use of excessive force on June 28, 2005 (*id.*, Exs. B-5–B-8, B-11); (4) a disciplinary hearing report for an incident that occurred on March 17, 2006, indicating that the action was dismissed because Plaintiff was transferred to the Department of Corrections (DOC), and a related DR investigation report (*id.*, Exs. B-9–B10); (5) a DR written by Officer L. Jordan for an incident that occurred on July 3, 2005, along with Lt. Atkins's recommendation (*id.*, Exs. B-12–B-13); (6) a DR written by Officer F. Zullo for an incident that occurred on July 28, 2005, along with a supervisor's comments/recommendations, a disciplinary hearing report indicating that Plaintiff was found not guilty because Officer Granger was able to obtain a "good count" without interference, and the related DR investigation report (*id.*, Exs. B-14–B-17); (7) a DR written by Officer J. Purvis regarding an incident that occurred on March 17, 2006, along with a supervisor's recommendation regarding the same incident (*id.*, Exs. B-18, B-20 (there is no exhibit marked as B-19)); (8) Plaintiff's medical records (*id.*, Exs. D-1–D-4);[5] (9) an x-ray from Gulf Coast Orthopaedic Specialists dated February 11, 2005, showing a metal rod in Plaintiff's arm (*id.*, Ex. E-1); and (10) an x-ray from Ft. Walton Beach Medical Center dated October 21, 2007, showing a metal rod in Plaintiff's arm (*id.*, Ex. E-2).

II.     LEGAL STANDARDS

      A.     Summary Judgment Standard

      In order to prevail on their motions for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

---

[5]These medical records are the same as those submitted by Officer Tobin with his special report (*see* Doc. 46 at Ex. C).

judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "[T]he substantive law will identify which facts are material" and which are irrelevant.  Anderson, 477 U.S. at 248.  An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  *See id.*; *accord* Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party."  Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust Co. v. Fidelity and Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).  The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative."  Anderson, 477 U.S. at 249–50.  "A mere 'scintilla' of evidence supporting the . . . [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment.  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 252, 106 S. Ct. at 2512).  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient.  Celotex Corp., 477 U. S. at 324 (quoting Fed. R. Civ. P. 56(e)).  Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *Id.*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).  The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment.  *See* Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000); Sammons v. Taylor, 967 F.2d 1533, 1544–45 & n.5 (11th Cir. 1992).

B.      Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, 42 U.S.C. § 1997e (PLRA), provides:  "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   The Supreme Court has recently stated that this "invigorated" exhaustion requirement is the "centerpiece" of the PLRA.  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2382, 165 L. Ed. 2d 368 (2006).  The exhaustion requirement helps to ensure that the "flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit."  Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 914, 166 L. Ed. 2d 798 (2007).  It also "attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'"  Woodford, 126 S. Ct. at 2387 (quoting Porter v. Nussle, 534 U.S. 516, 525, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002)) (footnote omitted).  The exhaustion requirement is mandatory, and there is no discretion to waive it.  Woodford, 126 S. Ct. at 2382; Alexander v. Hawk, 159 F.3d 1321, 1324–26 (11th Cir. 1998).  Additionally, the PLRA exhaustion requirement requires proper exhaustion, which means that a prisoner must comply with the procedural rules of the institution's grievance system.  Woodford, 126 S. Ct. at 2387–88.

However, prisoners are required to exhaust only administrative remedies that are "available."  42 U.S.C. § 1997e.  Even though remedies may be in place, they are not "available" if they are "remedies or requirements for remedies that an inmate does not know about and cannot discover through reasonable effort by the time they are needed."  See Goebert v. Lee County, 510 F.3d 1312, 1322 (11th Cir. 2007); see also Brown v. Sikes, 212 F.3d 1205, 1207–08 (11th Cir. 2000) (holding that a prisoner must "provide as much relevant information as he reasonably can in the administrative grievance process, . . . [but] a grievance procedure that requires a prisoner to provide information he does not have and cannot reasonably obtain is not a remedy that is 'available' to the prisoner"); Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004) ("The test for deciding whether the ordinary grievance procedures were available must be an objective one:  that is, would a similarly situated individual of ordinary firmness have deemed them available." (internal quotation marks omitted)); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) ("[A] remedy that prison

officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a) . . . ."
(second alteration in original)).  As the Eleventh Circuit noted in <u>Goebert</u>:

> [if Jail officials keep an inmate] in the dark about the path she was required to
> follow, the defendants should not benefit from her inability to find her way.
> . . . .
> If we allowed jails and prisons to play hide-and-seek with administrative remedies,
> they could keep all remedies under wraps until after a lawsuit is filed and then
> uncover them and proclaim that the remedies were available all along.

510 F.3d at 1323.

Additionally, some courts have held that purported requirements of prison grievance
procedures, even if they are set forth in a written handbook or guidelines, are not "available
administrative remedies" for PLRA purposes if the written procedures are not mandatory, exclusive,
and expeditious.  *See* <u>In re Bayside Prison Litigation</u>, 190 F. Supp. 2d 755, 771–72 (D.N.J. 2002)
(complaint procedure described in handbook could not be considered an administrative remedy for
purposes of PLRA's exhaustion requirement where "handbook creates the clear impression that the
use of the [] grievance procedure is optional not mandatory," and the described grievance process
is not expeditious "in that it did not require administrators to respond to complaints . . . in any
specific time period."); <u>Martin v. Sizemore</u>, No. Civ.A. 05-CV-105-KKC, 2005 WL 1491210, at *2
(E.D. Ky. June 22, 2005) (administrative remedies were not "available" to plaintiff because policy
set forth in inmate handbook was not a PLRA-compliant mandatory administrative remedy, based
upon the following: (1) it merely suggested that inmate "may" file grievance, (2) it was not exclusive
in that nowhere did it indicate that it provided the sole method inmate may utilize in registering a
grievance, (3) it made no reference to the PLRA, (4) it did not state that grievance was mandatory
for any purpose, (5) it was misleadingly entitled "Complaints" as opposed to "Grievance" or
"Administrative Remedy," and (6) it stated that only "legitimate" complaints would be answered).

The Eleventh Circuit has not decided, as some of its sister circuits have, how much less than
perfect compliance with administrative remedies is enough to constitute exhaustion, or what, if any,
exceptions to the exhaustion requirement exist.  *See* <u>Dole v. Chandler</u>, 438 F.3d 804, 811 (7th Cir.
2006) (holding that a prisoner properly exhausted his administrative remedies when the jail lost his
timely grievance form, but the prisoner did not attempt to re-file his complaint); <u>Hemphill</u>, 380 F.3d
at 689 (recognizing "special circumstances" that permit less than perfect compliance, including

reasonable but incorrect readings of the administrative procedures, and recognizing estoppel and failure to raise or preserve the defense as exceptions to the exhaustion requirement); Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004) (holding that substantial compliance with administrative procedures will exhaust them under the PLRA); Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002) (if applicable prison or jail regulations do not prescribe any particular content to inmate grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief.  All the grievance need do is object intelligibly to some asserted shortcoming."); see also Woodford, 126 S. Ct. at 2393 (Breyer, J., concurring) (recognizing that § 1997e(a) requires proper exhaustion, but suggesting that traditional exceptions to administrative exhaustion also apply to it).

III.    CONCLUSIONS OF LAW REGARDING MATERIAL FACTS

The undersigned concludes that administrative remedies were "available" to Plaintiff at the time of the alleged incident as evidenced by the parties' submissions, including Plaintiff's grievances, the Jail policy, and Deputy Director Lawson's affidavit (Doc. 1, Ex. A; Doc. 46, Exs. A, B).  In pertinent part, these submissions show that a written policy was in place at the time of the Defendants' alleged use of excessive force.  Moreover, Plaintiff was clearly aware of his ability to file grievances, based on his filing of (at least) four grievances following the incident, including one filed the day after the incident.  Additionally, the court concludes that the Jail policy does not create the impression that use of the grievance procedure is optional, and it contains specific and expeditious time periods.  For example, the policy states that an inmate "must file the complaint (grievance) within seven days of the alleged incident," and "the Grievance Officer shall have seven (7) days in which to answer the inmate's complaint" (Doc. 46, Ex. A) (emphasis added).  Finally, Plaintiff does dispute that the administrative grievance procedure was available to him.

To the extent Plaintiff claims that administrative remedies were unavailable because Defendants threatened him with violence if he filed or continued to file grievances, his argument fails.[6]  Plaintiff's conclusory allegations in his response to Defendants' special reports stating that

_____

[6]Although the Eleventh Circuit has not expressed an opinion on this issue, see Poole v. Rich, 2008 WL 185527, at *2 n.2 (11th Cir. Jan. 23, 2008), some courts have concluded that administrative remedies may not be available when prison officials engage in affirmative misconduct such as threats or intimidation to deter a prisoner from filing a

"they" threatened him and "set [him] up" and that the Jail "made [his grievances] disappear along with witness statements" (*see* Doc. 88), do not rise to the level that would render administrative remedies unavailable.  Initially, Plaintiff failed to describe with specificity who threatened him, the nature of the threats, and when the threats were made.  Moreover, Plaintiff has not alleged that he declined to file any grievances for fear of retaliation or harm, or that he was ever denied grievance forms.  Furthermore, the record establishes that alleged threats did <u>not</u> prevent Plaintiff from continuing to file grievances long after Defendants' alleged use of excessive force.  Indeed, Plaintiff submitted grievances on July 29, 2005, February 23, 2006, and March 8, 2006 (*see* Doc. 1, Ex. A).  Based on these facts, a similarly situated individual would not have deemed the administrative remedies to be unavailable.  *See* <u>Miller</u>, 247 F.3d 736, 740 (8th Cir. 2001).  Therefore, Defendants' threats did not render administrative remedies unavailable to Plaintiff.

The next issue is whether Plaintiff <u>properly</u> exhausted his administrative remedies.  As to the three grievances attached to Plaintiff's original complaint, each was clearly untimely.  The incident at issue in this action is alleged to have occurred on June 28, 2005, but the earliest of the those three grievances was filed on July 29, 2005, well beyond the seven-day requirement of the Jail policy.  Moreover, the first grievance does not address the use of excessive force — Plaintiff complains only of harassment by Officer Zullo.

Although the second grievance, dated February 23, 2006, refers to a grievance written for excessive force, it is unclear whether this grievance was intended to appeal the grievance of July 29, 2005, which was written against Officer Zullo, or if it was intended to refer to the grievance dated June 29, 2005, which concerns the use of excessive force by Officers Wallace and Allen (and which was submitted by Officer Tobin with his special report).  To the extent it was an "appeal" with regard to the grievance against Officer Zullo, it does not demonstrate exhaustion with regard to Plaintiff's claims in the instant action because it is unrelated to Plaintiff's excessive force claims.

---

grievance.  *See* <u>Hemphill v. New York</u>, 380 F.3d 680, 688 (2d Cir. 2004) (stating that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one:  that is, would 'a similarly situated individual of ordinary firmness' have deemed them available" and determining that "threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance"); <u>Kaba v. Stepp</u>, 458 F.3d 678, 685–86 (7th Cir. 2006) (determining that administrative remedies may not have been available when the prisoner was denied forms, intimidated into not pursuing formal grievances, and retaliated against for attempting to pursue administrative relief).

If it was intended to be an "appeal" of the June 29, 2005 grievance, it was untimely (as will be discussed more fully *infra*), given that the Jail policy requires an appeal within seven days.  Indeed, none of the time constraints in the Jail policy exceed fifteen days (*see* Doc. 46, Ex. A), but the second grievance, dated February 23, 2006, was filed approximately eight months after the alleged use of force and eight months after Plaintiff's filing of a grievance concerning the incident.

Finally, the third grievance, dated March 8, 2006, also refers to a delay in receiving a response to a grievance, but is not specific as to which grievance Plaintiff is referring.  Nevertheless, the third grievance does not cure Plaintiff's failure to submit the previous two grievances in a timely manner, and it does not clear up the ambiguity of the previously filed grievances.  Thus, with regard to the grievances dated July 29, 2005, February 23, 2006, and March 8, 2006, Plaintiff failed to properly exhaust his administrative remedies.

The remaining matters to consider, therefore, relate to the grievance filed by Plaintiff on June 29, 2005, which concerns the use of excessive force of June 28, 2005, and which was submitted by Officer Tobin with his motion for summary judgment (Doc. 46, Ex. F).  Initially, there is no dispute that Plaintiff filed this grievance within the seven days allowed under the Jail policy.  However, as Defendants state, the grievance is addressed to Deputy Director Lawson instead of a Grievance Officer as required.  As outlined in the Jail policy, appeals are to be directed to the Deputy Director, not an initial grievance (*see* Doc. 46, Ex. A).  Moreover, although appeals of an emergency nature may presumably bypass a Grievance Officer, Plaintiff did not label this grievance an emergency or give any indication that it was of an urgent nature (*see* Doc. 46 at 10 & Ex. E).  Thus, Plaintiff did not properly file this grievance because it failed to comply with the Jail policy.

Next, although Plaintiff received no response to this grievance, Deputy Director Lawson has stated that, "although not directly stated in the Inmate Grievance Procedure Policy, inmates are told they may appeal to the next higher level of administrative review if they fail to receive a response to a grievance when they believe a response is warranted" (*id.*, Ex. B at 3), and Plaintiff has not disputed that he was so advised.  Indeed, Plaintiff has submitted no evidence, either by affidavits or exhibits, to rebut Deputy Director Lawson's statement or to establish that he was not advised of the Jail's policy concerning grievances that receive no response.  Moreover, the evidence establishes that Plaintiff did not appeal this grievance to the next level of administrative review, that is, to the

Director of the Jail, despite being aware of the policy.  Thus, Plaintiff again failed to properly exhaust his administrative remedies because he failed to appeal to the next administrative level.

Even if the court were to liberally construe Plaintiff's later-filed grievances (i.e., those that concern a lack of response to earlier grievances) as "appeals,"[7] they are substantially untimely.  As noted *supra*, the later-filed grievances were not filed until February 23, 2006, and March 8, 2006, eight months after Plaintiff filed the excessive force grievance, and nearly eight months after Plaintiff failed to receive a timely response thereto (pursuant to Jail policy, the response was due on or before July 6, 2005, or seven days after Plaintiff submitted the grievance).  Indeed, Plaintiff was aware of the short response time required by the Jail policy because he mistakenly stated in the March 8 grievance that a response was required within five days (*see* Doc. 1, Ex. A).  Although Plaintiff was incorrect, the point is that he was well aware that a quick response was required, and although inmates are told that they can appeal to the next higher level if officials fail to respond to their grievances, Plaintiff failed to file a follow-up grievance or "appeal" for approximately eight months.  Therefore, Plaintiff failed to properly exhaust the administrative process with regard to the June 29, 2005 grievance because he failed to address the grievance to the appropriate official, he failed altogether to appeal to the Director of the Jail, and to the extent his later-filed grievances are construed as "appeals" of the June 29 grievance, they are untimely.

In conclusion, the court finds that administrative remedies were available to Plaintiff, and Plaintiff failed to properly exhaust the available administrative remedies.  Therefore, this 1983 action must be dismissed pursuant to 42 U.S.C. § 1997e.

Accordingly it is respectfully **RECOMMENDED**:

1.       That Defendants Tobin, Wallace, and Allen's motions for summary judgment (Docs. 46, 63) be **GRANTED**.

2.       That this case be **DISMISSED without prejudice** for failure to exhaust administrative remedies.

3.       That judgment be entered in favor of Defendants.

---

[7]As previously noted, because the initial grievance was addressed to Deputy Director Lawson, an "appeal" should have been directed to the Director of the Jail (*see* Doc. 46, Ex. A).  Plaintiff's later grievances, however, are directed to Officer Zullo and Captain Morasch (*see* Doc. 1, Ex. A).

At Pensacola, Florida, this 9<u>th</u> day of January 2009.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**